(No. 4219- )

ROY H. WATSON, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 9, 1951.*

W. W. DAMRON, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant, Roy H. Watson, while employed in the Department of Public Works and Buildings, Division of Highways of the State of Illinois, was injured on September 21, 1948.

No jurisdictional questions are raised and claimant's earnings for the year preceding his injury were $2,160.00. He is married, but has no children under 16 years of age.

Claimant, with two other employees, was rolling a 55 gallon drum of asphalt up a plank, which was extended from a truck to the ground, and, while so doing, felt a sharp pain in his back at the belt line. He had already helped load three or four similar drums onto the truck.

The pain was persistent, and he did not return to work the following day, but did go to see a chiropractor by the name of Dr. McKee. He was in such misery that he had his wife call an ambulance, and he was taken to Dr. Beverly Moore at Benton, where he was examined and hospitalized.

Dr. Moore did not testify, but a report of the Division of Highways contains a report, dated September

27, 1948, from the doctor. This report indicates that the X-Rays showed no bone pathology and *"the intervertebral spaces are well preserved."* His conclusion, as shown by the report, was as follows, "This man had a lumbosacral strain with some discomfort referred down into the leg. Early treatment is conservative."

A report, dated October 23, 1948, showed that pain in the back had disappeared, but that he did complain of a little discomfort in the region of the great trochanter and the head of the fibula in the region of the outer side of the knee when he put weight on the left leg.

A report, dated December 1, 1948, showed that an examination on November 29, 1948 indicated the leg as definitely improved; that he had no active pain below the knee; that he did have a little soreness in the outer upper portion of the left leg, and that he stooped well.

A report, dated January 14, 1949, was for an examination had on December 13, 1948. Claimant had hauled some manure, and lifted a garage door on the track, which he thought made his back worse. The pain in the leg was not made worse by this experience.

Dr. Moore advised him to return to work on December 15, 1948, and, if he could not continue, he was to report back.

Claimant returned to work for two days, but could not continue. On February 4, 1949, he was sent to Dr. Fred Reynolds, orthopedic surgeon, in St. Louis, Missouri. Claimant stated no X-Rays were taken, and the doctor examined him mostly by questioning him about his misery, and where it was, and how it affected him.

From the report of the Division of Highways, a report from Dr. Reynolds, dated February 12, 1949, shows that claimant was examined, and his feeling was that claimant had received a ruptured interverebral disc,

probably at the lumbosacral junction on the left side. He recommended a belt, and anticipated that claimant would recover without the necessity of surgery, and felt he could do light work.

Claimant returned to work on February 7, 1949, and worked until March 3, 1949, when he was let out.

Dr. Reynolds again saw claimant on May 25, 1949, and his examination showed claimant to have tenderness at the lumbosacral junction, and over the siatic distribution in the leg. There was limitation and extension in the spine, and pain on extension. Otherwise, the examination was essentially negative. The doctor stated that the man had a ruptured intervertrebral disc, that claimant did not want surgery, and that he felt that a settlement of 20 per cent total disability should be made.

Claimant testified that he had done farming before he went to work for the State Highway Division. The report showed he had been working on the highway since August 12, 1947; that since leaving the Division of Highways he had been farming; that while on the highway, he rented one-half of his 60 acre farm for wheat; that since he left the highway, he had cultivated 20 acres on his farm; that he has not worked for anyone else but himself, and prior to his injury he had no trouble with his back; and that the last time he saw a doctor was on May 25, 1949, and is not now under the care of a doctor.

Dr. S. H. Frazer made no physical examination of the claimant, but based his opinions on the testimony he heard, and the report of Dr. Reynolds. The principal part of his testimony was to the effect that an operation would not be recommended for a man 60 years of age.

After the original hearing the Court denied an award, and granted a rehearing for additional testi-

mony. Dr. Frazer stated claimant's left foot showed diminished sensation, and possible future paralysis of the left leg after a re-examination on October 14, 1950.

Claimant, Roy H. Watson, at the hearing of November 27, 1950, testified that the pain in his left leg was gradually getting worse.

The Court concludes that claimant has sustained a permanent specific loss of 50 per cent of the use of the left leg, and, on the basis of this record, we make the following award:

Fifty per cent permanent partial specific loss of the use of the left leg in the sum of $1,852.50, all of which has accrued and is payable forthwith.

The claim of Zola Young Sloan for stenographic services in the amount of $69.78 is found reasonable, and an award in the amount of $69.78 is hereby allowed.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."

All future payments are subject to the terms and provisions of the Workmen's Compensation Act of the State of Illinois.

Jurisdiction of this cause is specifically retained for the entries of such further orders as may from time to time be necessary.